Argued and submitted September 3, affirmed October 15, reconsideration denied
November 26, 1985

# WRIGHT et al,
*Petitioners on Review,*

*v.*

# KECH-TV et al,
*Respondents on Review.*

## (CC 133,264; CA A28750; SC S31616)

707 P2d 1232

Jossi Davidson, Silverton, argued the cause and filed the petition for petitioners on review.

Michael Duane Brown, Salem, argued the cause for respondents on review. With him on the response to the petition for review was Churchill, Leonard, Brown & Donaldson, Salem.

Lawrence R. Derr, of Weiss, DesCamp, Botteri & Huber, Portland, filed an *amicus curiae* brief on behalf of Tower Action Committee.

Robert C. Cannon, Marion County Legal Counsel, Salem, filed an *amicus curiae* brief on behalf of Marion County.

JONES, J.

## JONES, J.

Plaintiffs seek review of the Court of Appeals decision affirming the dismissal of their complaint by the Marion County Circuit Court. Plaintiffs brought this action to compel removal of defendant KECH-TV's transmission tower and related facilities from land designated for exclusive farm use in the Marion County Comprehensive Plan and implementing zoning ordinances. We affirm the Court of Appeals.

In June and July, 1981, Marion County issued permits for construction of a television transmission tower and adjoining building. The tower was erected in October 1981. The County processed the applications for the permits as if the proposed use was a permitted use in a farm use zone[1] and, consequently, did not conduct quasi-judicial proceedings in connection with issuance of the permits.[2]

In April 1982, plaintiff Wright commenced this action in the Marion County Circuit Court by filing a complaint which she characterized as a request for injunctive relief.[3] In June 1983, the circuit court dismissed the complaint

---

[1] ORS 215.213 sets forth the non-farm uses that are permitted uses in any area zoned for exclusive farm uses. Before amendment in 1983, the list of permitted uses included "[u]tility facilities necessary for public service, except commercial facilities for the purpose of generating power for public use by sale." ORS 215.213(1)(d) (1981). The 1983 amendment, Or Laws 1983, ch 827, § 27b, changed subsection (1)(d) to read:

"Utility facilities necessary for public service, except commercial facilities for the purpose of generating power for public use by sale *and transmission towers over 200 feet in height*." (New language emphasized).

[2] At the time this action arose, the Marion County zoning ordinance that addressed exclusive farm use zones incorporated the language of ORS 215.213(1)(d), *see supra* note 1, and allowed as a permitted use in an exclusive farm use zone "[u]tility facilities necessary for public service, except commercial facilities for power generation." Marion County Zoning Ordinance 136.020(d).

[3] Plaintiffs prayed for judgment against the defendants as follows:

"1. Requiring the defendants to cease using the tower and related facilities;

"2. Requiring the defendants to remove the KECH and ON TV broadcasting tower, wires, pylons, building, foundations, bridge, equipment, parking lot, fence, road, and every other related condition, use or structure located on land near 5252 Davis Creek Road, Marion County, Oregon;

"3. Requiring the defendants to restore the land to the same degree of farmable utility it enjoyed prior to the presence of the above mentioned conditions, structures and uses;

"4. Requiring the defendants to comply with the decree within a reasonable

for lack of subject matter jurisdiction on the ground that the complaint presented land use questions within the exclusive jurisdiction of the Land Use Board of Appeals (LUBA). The Court of Appeals affirmed. *Wright v. KECH-TV,* 71 Or App 662, 694 P2d 545 (1985). Meanwhile, in April 1983, plaintiffs herein filed a notice of intent to appeal the county's decision to LUBA. LUBA dismissed the appeal as untimely under Oregon Laws 1979, chapter 772, section 4(4) (*amended by* Or Laws 1981, ch 748). The Court of Appeals affirmed LUBA. *McCoy v. Marion County,* 69 Or App 522, 686 P2d 1059, *rev den* 298 Or 334 (1984).

Under the land use statutes in effect in July 1981, LUBA had exclusive jurisdiction to review "land use decisions," defined in pertinent part as:

"(a)   A final decision or determination made by a city, county or special district governing body that concerns the adoption, amendment or application of:

(A)   The state-wide planning goals;

(B)   A comprehensive plan provision; or

(C)   A zoning, subdivision or other ordinance that implements a comprehensive plan * * *." Or Laws 1979, ch 772, § 3, *now codified at* ORS 197.015(10).[4]

The initial inquiry, then, is whether the issuance of the permits by Marion County was a land use decision as defined. The county's issuance of the permits was a determination that "concern[ed] the * * * application of * * * [a] zoning * * * ordinance that implements a comprehensive plan," Marion County Zoining Ordinance 136.020(d), and was a land use decision under the definition in effect at the time. We note that plaintiffs do not claim otherwise.

---

period of time not to exceed 60 days;

"5. Enjoining the defendants from offering to or allowing the use of the tower and related uses by any other person or organization pending execution of the requested judgment;

"6. Awarding plaintiffs their costs and disbursements incurred herein; and

"7. Granting to plaintiffs such further relief as may be equitable and appropriate under the circumstances."

[4] This definition was not altered by the 1981 amendments to the land use statutes, which became effective August 21, 1981. Or Laws 1981, ch 748, § 62.

Because the county's decision was a land use decision, a notice of intent to appeal the decision was required to be filed with LUBA "not later than 30 days after the date the decision sought to be reviewed becomes final." Or Laws 1979, ch 772, § 4(4) (*amended by* Or Laws 1981, ch 748).[5] The plaintiffs failed to file within the 30-day time period and by statute their appeal to LUBA was time-barred.

Our concern in allowing review was that if no right to notice or hearing is provided in connection with certain types of decisions that are technically "land use decisions" within LUBA's exclusive jurisdiction, there will be cases (such as this one) in which persons who might be aggrieved or adversely affected by the decision will not learn of it until well after the limitation period has run. Those persons effectively will be left without a forum, through no fault of their own.[6]

The legislature apparently recognized this problem and, in 1983, redefined "land use decision" specifically to exclude "a ministerial decision of a local government made under clear and objective standards contained in an acknowledged comprehensive plan or land use regulation and for which no right to a hearing is provided by the local government." ORS 197.015(10)(b); Or Laws 1983, ch 827, § 1.

The 1983 enactment of ORS 197.015(10)(b) does not help plaintiffs. Plaintiffs have not persuaded us that the redefinition of "land use decision" to exclude ministerial-type decisions was intended to clarify what the legislature had intended all along. *Cf. 1000 Friends of Oregon v. Wasco County Court,* 299 Or 344, 358 n 15, 703 P2d 207 (1985). To the contrary, plaintiffs seem to acknowledge that the intent of the

---

[5] *Repealed by* Or Laws 1983, ch 827, § 59. ORS 197.830(7) now provides a 21-day limitation period.

[6] In *McCoy v. Marion County,* Or App 522, 525-26, 686 P2d 1059 (1984), the issue was raised whether the limitation period might be tolled under some circumstances. In that case, LUBA suggested that there may be circumstances in which a petitioner would be excused from acting within 30 days of the land use decision. The Court of Appeals felt it unnecessary to consider the issue commenting:

"It is absolutely clear from petitioners' arguments, the record and matters subject to judicial notice that petitioners were aware of the structures and of the county's involvement in permitting them *far more* than 30 days before their appeal to LUBA was filed. * * *" (Emphasis in original.)

legislature at the time Marion County issued the contested permits was for LUBA to review those decisions.[7]

Furthermore, even if we assume that LUBA's exclusive jurisdiction as provided by the 1979 statute was never intended to extend to "ministerial decisions made under clear and objective standards for which no right to a hearing is provided," ORS 197.015(10)(b), such an interpretation of that statute would not benefit plaintiffs. Plaintiffs have insisted since the outset of this proceeding that the issuance of the permits was a quasi-judicial decision made under standards so vague as to the unconstitutional. This alone forecloses plaintiffs from relying on a theory that *ministerial decisions* have never been within the ambit of LUBA jurisdiction. In any event, even if ORS 197.015(10)(b) had been in effect when Marion County issued the permits, the "ministerial decision" exclusion would be inapplicable because the language of the statute requires that the ministerial decision be made under standards "contained in an *acknowledged* comprehensive plan or land use regulation" (emphasis added). The county's comprehensive plan was not acknowledged until June 1982.[8]

Plaintiffs vigorously argued on appeal that they should not be required to seek LUBA review of the issuance of the permits because LUBA is unconstitutional. They argue that under Article III, section 1, and Article VII (Amended), section 1, of the Oregon Constitution, a single entity like LUBA cannot simultaneously be a non-judicial body and perform judicial functions.

In their petition for review of the Court of Appeals

---

[7] As an example, in Appendix 9 of plaintiffs' brief before the Court of Appeals, they state, "The legality of the tower's location is on its face a land use question within LUBA's jurisdiction." Similar statements were made throughout oral argument before this court.

[8] Plaintiffs also rely on ORS 197.825(4)(a), enacted by Oregon Laws 1983, chapter 827, section 30, which provides in part:

"Notwithstanding subsection (1) of this section [providing for LUBA's exclusive jurisdiction to review land use decisions], the circuit courts of this state retain jurisdiction:

(a) To grant declaratory, injunctive or mandatory relief in proceedings arising from decisions described in ORS 197.015(10)(b) or proceedings brought to enforce the provisions of an adopted comprehensive plan or land use regulations; * * *"

This statute was enacted well after plaintiffs' complaint was dismissed by the circuit court, and is not relevant to the resolution of this case.

decision, plaintiffs continued to focus on the constitutional issues. We initially denied review. Plaintiffs thereafter filed a petition for reconsideration of that denial, which was allowed. The decision to allow review was not prompted by any concern on the part of the court regarding the constitutionality of LUBA. We allowed review because of administrative law questions raised by the jurisdictional "KECH-22"[9] encountered by plaintiffs in the course of this action.

In an effort to focus the parties' attention on the administrative law aspects of the case, we directed three questions to counsel and requested memoranda of law in response to be submitted in advance of oral argument.[10] Plaintiffs filed the requested memorandum, but at oral argument abandoned their administrative law theory in favor of the separation of powers theory advanced in the original petition for review.[11] We need not pursue the administrative

---

[9] *See McCoy v. Marion County, supra,* 69 Or App at 526 n 4. The Catch-22 is that the plaintiffs could not invoke LUBA jurisdiction because they did not know of the land use decision in time, were denied jurisdiction in the circuit court because the decision lies within LUBA's exclusive jurisdiction and, eventually, were denied LUBA jurisdiction because, once again, their petition to LUBA was time-barred.

[10] The questions were:

"1. ORS 197.825 (before the 1983 addition of subsection (2)) gave LUBA 'exclusive jurisdiction to review any land use decision of a local government.' In litigation to which a government agency is not a party, outside the land use context, one party sometimes relies on an agency rule or other action while the other party challenges the validity of the rule or other action relied on. How do courts generally deal with such a challenge? Is this kind of decision treated as judicial review of agency action within the meaning of statutes that prescribe the method for such review?

"2. In this case, do ORS 197.825(2) and ORS 197.830 bear on the foregoing question insofar as they assume that one who petitions LUBA for review must have had the opportunity to exhaust other remedies, that the petitioner must have appeared before the local government, and that the local government will transmit the record of its proceeding to LUBA?

"3. If a plaintiff challenges a defendant's reliance on a governmental rule or another action which the plaintiff did not challenge (and sometimes could not have challenged) directly, are all grounds available to the plaintiff procedural as well as substantive?"

[11] At oral argument before this court, counsel for plaintiffs said:

"There arose from the hills a behemoth tower and the people were stunned. This is a case about those peoples rights. The truest resolution of the issue flows from the direct application of Article 1, section 10, Article III, section 1, and Article VII, section 1, [of the Oregon Constitution]. There's solid precedent for this approach [citing opinions]. There's also an administrative law solution to the problem, as focused by the court's questions. Plaintiffs believe this couldn't be

law questions here.

We reject plaintiffs' arguments regarding the constitutionality of LUBA. The starting point in a separation of powers analysis is Article VII (Amended), section 1, of the Oregon Constitution, which provides in part:

> "The judicial power of the state shall be vested in one supreme court and in such other courts as may from time to time be created by law. * * *"

LUBA is directed by statute to "conduct review proceedings upon petitions filed in the manner prescribed." ORS 197.820(1) (*former* Or Laws 1979, ch 722, § 2(a)(1)). The agency is empowered to conduct review of land use decisions through quasi-judicial proceedings. LUBA is a tribunal created by the state to ensure that local governments do not misapply the state land use statutes and related goals and rules. That this function is carried out through case-by-case decisionmaking in a quasi-judicial setting does not violate the doctrine of separation of powers as expressed by Article VII (Amended), section 1, or Article III, section 1, of the Oregon Constitution.

Previous cases make it clear that the doctrine of separation of powers does not prevent the exercise of adjudicatory functions by administrative agencies. *See, e.g., Mallatt v. Luihn,* 206 Or 678, 294 P2d 871 (1957); *Evanhoff v. State Industrial Acc. Com.* 78 Or 503, 154 P 106 (1915); *In re Willow Creek,* 74 Or 592, 144 P 505, 146 P 475 (1915); *see also Baxter v. Monmouth City Council,* 51 Or App 853, 627 P2d 500 (1981). We now hold that the doctrine of separation of powers does not prevent the exercise of adjudicatory functions by LUBA.

Plaintiffs also claim that ORS 215.185 authorizes this action for injunctive relief to be brought in circuit court. ORS 215.185 provides in relevant part:

> "In case a building or other structure is, or is proposed to be, located, constructed, maintained, repaired, altered, or used, or any land is, or is proposed to be, used, in violation of an ordinance or regulation designed to implement a comprehensive plan, the governing body of the county or a person

---

viewed simply as an exhaustion of administrative remedies case. But really this is not an administrative law case. This is a separation of powers case."

whose interest in real property in the county is or may be affected by the violation, may, in addition to other remedies provided by law, institute injunction, mandamus, abatement, or other appropriate proceedings to prevent, temporarily or permanently enjoin, abate, or remove the unlawful location, construction, maintenance, repair, alternation, or use. * * *"

■ If plaintiffs' complaint alleged that defendants violated or proposed to violate the terms of the permits or the Marion County ordinance under which they were issued, perhaps the complaint would allege a claim for relief cognizable in circuit court because no "land use decision" made by a "local government"[12] would be at issue. LUBA would not be the correct forum. The complaint, however, clearly challenges the issuance of the permits by the county, and not the subsequent actions taken pursuant to the permits by the defendants. The thrust of the complaint is that the issuance of the permits violated the statewide land use planning goals, raising issues lying exclusively within the jurisdiction of LUBA.[13]

The Court of Appeals is affirmed.

---

[12] "Local government" is defined in ORS 197.015(12) as

"* * * any city, county or metropolitan service district formed under ORS chapter 268 or an association of local governments performing land use planning functions under ORS 197.190."

[13] Plaintiffs also maintain that, although treated as ministerial by the county, the issuance of the permits should have been treated as quasi-judicial. Plaintiffs argue that a county's failure to provide them notice and an opportunity for a hearing violated their constitutional rights. Whatever the merits of this argument might be, the plaintiffs did not allege it in the complaint filed in the circuit court, and we do not address it. We note, however, that insofar as a land use decision is challenged on constitutional grounds, LUBA has statutory authority to decide constitutional questions. *See former* Or Laws 1981, ch 748, §§ 4(7) and 5(4)(a)(E); ORS 197.830(11), 197.835(8)(a)(E).