Argued and submitted April 26, motion to dismiss denied; affirmed May 24, reconsideration denied July 14, petition for review denied August 29, 1989 (308 Or 315)

# CITY OF OREGON CITY,
*Petitioner,*

*v.*

# CLACKAMAS COUNTY et al,
*Respondents.*

## (LUBA 88-098; A60140)

773 P2d 1343

Mark J. Greenfield, Portland, argued the cause for petitioner. With him on the brief were Edward J. Sullivan and Mitchell, Lang & Smith, Portland.

Michael E. Judd, Chief Assistant County Counsel, Oregon City, filed the brief for respondent Clackamas County.

Jeff Bachrach, Portland, argued the cause for respondents Vancouver Federal Savings Bank, Michael Fingerut, C. Joseph Van Haverbeke and ELPH Enterprises. With him on the brief was O'Donnell, Ramis, Elliott & Crew, Portland.

John H. Hammond, West Linn, waived appearance for respondent Clairmont Water District.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

■ Oregon City seeks review of LUBA's affirmance of Clackmas County's design review approval for Phase II of the Country Village Mobile Home Park.[1] The issue is whether county was required, by an intergovernmental agreement between it and city or by an earlier order in its review of the Country Village proposal, to impose a condition of approval that the area be annexed to city before it may be developed and occupied. City argues that county was required to do so, and respondents argue the contrary.[2] LUBA agreed with respondents' conclusion. We affirm.

In 1980, city and county entered into an Urban Growth Management Agreement to coordinate planning for unincorporated urban areas near city. City agreed to furnish urban facilities and services to the areas, subject to the provisos that "City may require annexation prior to the provision of such urban facilities and services," and

"that the provision of such services shall be preceded by annexation to the City, unless the parties specifically agree otherwise."

In 1981, the UGB was amended to include the Country Village area, and city and county executed an addendum to provide that the provisions of the agreement "which required annexation to the City prior to the provision of sewer facilities

---

[1] Those of you who feel that you will not be able to stay for the entire discussion are asked to leave the room at this time.

[2] Respondents argue alternatively that the applicable county ordinance provisions do not permit such a condition to be considered in the design review process or attached to the approval. LUBA disagreed. We need not reach that argument.

Respondents Vancouver Federal Savings Bank, Fingerut, Haverbeke and ELPH Enterprises have moved to dismiss the petition for review as moot. They explain:

"Since this case began, Phase II has been developed and residents have moved in. Annexation cannot be imposed against the will of a majority of residents. On March 28, 1989, a special annexation election was held, pursuant to ORS 199.505(2) and (3), and the residents of Phase II voted not to annex into Oregon City. * * *

"Within the context of this appeal of Phase II design review, the Court cannot undo the election or force annexation upon the residents. Therefore, this appeal is moot and should be dismissed."

The issue before us is not whether the area will or can be annexed, but whether county was required to make annexation a condition of approval and to disallow development until annexation occurs. That question is not moot, and the motion is denied.

shall be waived until the property [in question] becomes contiguous to the City." The following year, the parties entered into a revised urban growth management agreement, which was generally similar to and duplicated the two annexations provisos in the 1980 instrument.

The application process for the Country Village Mobile Home project also began in 1982. In 1986, the proponents sought and county allowed a modification of various conditions of approval that it had imposed during the application and review process. The order allowing the modification included, *inter alia,* condition 2(b), requiring the developers to

> "[a]cquire approval of a waiver or amendment to the Oregon City-Clackamas County * * * Agreement, if the project is to be developed without annexation to Oregon City."

In 1987, city and county executed a "second addendum" to the 1982 agreement. It states, in part:

> "[T]he City and County agree that the * * * Agreement provisions which require annexation to the City will require annexation of [the relevant] property when this property is contiguous to the City *or when the City requires annexation."* (Emphasis supplied.)

The design review approval that city challenges was granted by county in 1988, without an annexation condition.

■     City's first assignment is that LUBA erred by concluding that the 1982 agreement and the second addendum do not require county to make pre-development annexation a condition of the design review approval. City begins with the premise that the annexation provisos in the 1982 agreement, standing alone, would have required county to impose that condition. It then argues that the second addendum does not modify that requirement, but simply makes it contingent, *inter alia,* on city's decision to "require annexation." According to city, the addendum

> "states, plain and simple, that annexation will be required when the City requires it. It is the City's choice *when* to require it. Until such time, the developer may proceed with preannexation urban development, but that privilege continues only until such time. Once the City requires annexation, it simply restores the requirements of the 1982 [agreement]." (Emphasis city's.)

Curiously, respondents either agree with or do not dispute city's understanding of the 1982 agreement,[3] and they base their contractual arguments entirely on the language and history of the second addendum. They regard the addendum as more of a waiver of the 1982 annexation provisos than the savings clause that city understands it to be. Respondents argue, variously, that the addendum "does not impose any affirmative duty on the county to institute, pursue or facilitate annexation"; that it simply reserves city's right to *initiate* annexation proceedings; and, maybe, that it precludes county from opposing annexation. Respondents also suggest that the second addendum "expanded" the contractual modification in the first addendum, by allowing city to initiate annexation at any time rather than awaiting the time when the area would become contiguous to city. It therefore, in effect, modifies and supersedes the provisos in the underlying agreements as well as the earlier modification in the first addendum.

LUBA concluded:

> "[City's] reading of the Second Addendum asks us to assume an intent on the part of the city and county that is not expressed in the language of the agreement. If [city] wished to reserve under the Second Addendum such extraordinary unilateral discretion, we believe it was obliged to make clear in the written agreement that it was reserving rights both (1) to initiate annexation at any time, and (2) to stop development or to require imposition of a condition requiring predevelopment annexation at any time before county grant of final development approval."

We agree, generally. Assuming that the annexation provisos of the 1982 agreement, standing alone, would have required county to impose the annexation condition, city's argument can succeed only if it is correct in contending that the second addendum leaves the provisos standing and *simply* makes

---

[3] LUBA noted that

"county apparently interpreted the [1982 agreement] to prohibit approval of development before annexation * * * [and] to require it to condition its approval of development of Country Village on a waiver or amendment of the * * * requirement for annexation prior to provision of urban services. No party in this case argues that interpretation was incorrect, and we find no reason to dispute the county's interpretation."

We also find no occasion to comment on the correctness of city's and county's interpretation of the 1982 instrument, and we assume its correctness *arguendo* in this opinion.

their enforcement optional with city. We do not agree that the addendum can be read that narrowly. If the original provisos mandated annexation before services could be provided or development allowed, the second addendum modifies them substantially. It permits pre-annexation services and development until the area becomes contiguous to city or city elects to require annexation. The addendum eliminates any *requirement* of pre-development annexation in the underlying agreements.

That effect of the second addendum becomes clearer when it is considered in historical context with the first addendum. That addendum modified the annexation requirements in the 1980 agreement by waiving them, at least for purposes of some facilities and services, until the area became contiguous to city. Although it is unclear to us—and the parties do not discuss—whether the first addendum retained any *independent* effect after the 1982 agreement was executed, the second addendum refers to and quotes part of the first in its recitals and draws and builds on the substance of the first. Both relate to and contain the "contiguousness" modification of the annexation requirements in the agreements. The second addendum adds the "when the city requires" alternative to the "contiguousness" modification that it adopts from the first, but the second addendum is no less a modification of the underlying provisos because it modifies them in two alternative ways rather than one. We conclude that any requirement of a predevelopment annexation condition in the underlying agreements did not survive the addendum.

We are unsure whether city also argues here that the second addendum itself, independently of the annexation provisos in the 1982 agreement, contains any requirement that county make pre-development annexation a condition of its approval. If that argument is made, it is unmeritorious for the reasons that LUBA stated. There is nothing in the addendum to suggest that *county* must take any action to implement city's decision to annex, let alone the very specific action that city seeks to compel.

■ We reject city's assignment based on the contracts. It contends in its second assignment that condition 2(b) of county's 1986 order required county to impose the annexation condition. The condition required a waiver or amendment of

the annexation provisos in order for development to take place without or before annexation. LUBA said:

> "[T]hat condition simply required amendment of the [agreement] and this requirement was fully satisfied when the Second Addendum was adopted."

City argues that "LUBA erred * * * by concluding that condition 2(b) required only that an amendment be secured," and it contends that the *requirements* of the resulting amendment, *i.e.,* the second addendum, are now embodied in condition 2(b) and must be applied to the design review approval decision. Even if city were correct, condition 2(b) would mandate only what the addendum itself requires. We have concluded that the addendum does not require what city wants.

Motion to dismiss denied; affirmed.